IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| CARL E. JACKSON, | ) |
|    Plaintiff, | ) No. 2020-cv-5630 |
| | ) |
| v. | ) Judge: Charles P. Kocoras |
| | ) |
| CITY OF CHICAGO, et al | ) Magistrate Judge Susan E. Cox |
|    Defendants. | ) |
| | ) Jury Demand |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
JOINT MOTION FOR SUMMARY JUDGMENT**

Plaintiff, CARL JACKSON, submits this Memorandum, stating as follows:

**INTRODUCTION**

Carl Jackson is an African American man with a GED, certified in construction, works as a laborer (SMFA ¶1) and lives in a predominately black neighborhood. (SMFA ¶30). On September 22, 2018, he was targeted by police officers who violated his constitutional rights in retaliation for him recorded Rodriguez and Gardner when they harassed and refused to give their names and badge numbers, one to two weeks prior (SMFA ¶13).

**SUMMARY OF DISPUTED MATERIAL FACTS**

There is a plethora of disputed facts. Defendants are asking this court to dismiss Plaintiff's claims, but their entire motion improperly depends on this court ignoring the testimony of several witnesses and leveraging the misrepresentations of the officers above documented evidence. Material disputes include whether OEMC receive the anonymous call 21:46, after Jackson's arrest; whether the anonymous caller exists; whether Rodriguez saw Jackson make suspicious movements in his vehicle, despite his body worn camera not picking it nor did he saying anything; whether the officer retaliated against Jackson and planted drugs in Jamal's bag and in Jackson's vehicle (SMFA ¶13); whether the officers purposely failed to film the search and seizure to protect each other or

1

whether the officer made false, misleading, and incomplete reports to violate Jackson's rights (SMFA ¶14-17, 32-40).

## STANDARD OF REVIEW

Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248. The court must view the evidence in the light most favorable to the opposing party and does not make credibility determinations or weigh conflicting evidence. *See, e.g.*, *Tolan* v. *Cotton*, 134 S. Ct. 1861, 1866 (internal citations omitted) *McCann* v. *Iroquois Mem'l Hosp.*, 622 F.3d 745, 752. The court cannot make credibility determinations or decide which inferences to draw from the facts; these are jobs for a factfinder. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255. "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920. Where the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the motion must be denied. *Lujan,* 497 U.S. at 888, 110 S.Ct. 3177.

## ANALYSIS

A trier of fact could find for the Plaintiff. Defendants are not entitled to summary judgment for seven reasons. First, they have pled themselves out of court as the OEMC Query Report about the anonymous caller purportedly giving the officer probable cause or reasonable suspicion, happened hours after Jackson's arrest. Second, the mention of a 911 call is hearsay

| Event Chronology-1826512781 | | | | |
|---|---|---|---|---|
| Date | Wkstn | Person | Activity | Text |
| Sep 22, 2018 21:46:16 | PADM06 | D115561 | CLEAR | 661E |
| Sep 22, 2018 21:46:16 | PADM06 | D115561 | CLOSE | |
| | | | RMKS | *** WIRELESS CALL*** |
| | | | RMKS | EVERYDAY FROM 3-6 3 MALES SIT ON TOP OF GOLD BUICK AND SELL DRUGS NFI |

and should be stricken. (Ex. A). Third, Jackson told the officers the bag belonged to Jamal and a

2

lady came out the restaurant trying to get a bag out Jackson's vehicle that belonged to Jamal. (Ex V, 4:26). These affirmative defenses prevented probable cause. Fourth, Jackson's conspiracy claim is supported by an underlying Fourth Amendment violation and there is evidence in support. Fifth, Defendants failed to intervene and stop the constitutional violation against Jackson and allowed him to be arrested with two minutes of the officers arriving on the scene. Sixth, Defendants are not entitled to qualified immunity. Seventh, Plaintiff can succeed on all his underlying claims, and his indemnification claim against the City of Chicago should not fail.

## ARGUMENT

I. **Defendants Are Not Entitled To Summary Judgment On Plaintiff's False Arrest Claim**

  i. *Unlawful arrest*

The officers lacked probable cause and reasonable suspicion to seize, detain, and/or arrest him based on an anonymous caller who they did not know or investigate the veracity and credibility of their statements. (SOFR ¶¶6,10). Whether an officer had probable cause to make an arrest is a question of fact for the jury, although the court can decide it when the material facts are undisputed. *Jones,* 45 F.3d at 182. In this case, every fact about probable cause and reasonable suspicion is disputed making it proper to be decided by a jury. The evidence does not clearly establish that Rodriguez had a reasonable belief that Plaintiff had violated a criminal statute. When the officers arrived at Plaintiff's vehicle, they did not smell cannabis nor did they see drug paraphernalia at the scene. Jackson did not violate any laws by sitting in his vehicle in front of a restaurant. There was no logical reason for any reasonable officer to ask him to get out of the car considering no one saw him commit a felony (SOFR ¶10) except one to two prior the officers stopped and harassed Jackson, he filmed them, and were now retaliating against him. (SOFR ¶15). After he was told to step out of his vehicle, despite the officers not fearing for their safety since

3

they did not have guns drawn, they searched his vehicle without probable cause, found a bag that belonged to Jamal, and searched it in a manner that no one could see what was transpiring. This court has held that "mere suspicion of illegal activity at a particular place is not enough to transfer that suspicion to anyone who leaves [or arrives at] that property" and thus "is not enough to justify stopping everyone emerging from [or arriving at] that property." *United States v. Bohman,* 683 F.3d 861, 864. Additionally, a law enforcement officer may make an investigative stop of a person based on **well-founded** suspicions that the person has been, is, or is about to be engaged in criminal activity. *U.S. v. Smith*, 697 F.3d 625, 631(citing *U.S. v. Bullock,* 632 F.3d 1004, 1014–15. There was nothing about the alleged anonymous call or the officer's claim that Jackson looked suspicious because he allegedly reached down to grab something was well founded. If a mere hunch is the standard, then all citizens would be subjected to unlawful searches and seizures.

    **i.    Defendants Have Pled Themselves Out Of Court Because The Alleged Anonymous Tip Was After Plaintiff's Initial Arrest/Detention**

The OEMC Records state the alleged anonymous person called 911 at 21:46:16 hours after the incident occurred and Jackson's vehicle was towed at 18:49, based on the City's time stamped ticket. Thus, the call cannot form a basis for probable cause to search or seize. The officers stated probable cause was that Jackson was selling drugs based solely on the anonymous caller describing 3-6 men sitting on top of a gold Buick selling drugs. However, they stopped one Black man inside of his car alone. The anonymous caller did not even state the race of the individuals' selling drugs. This stop could not have been based on anything more than a hunch, which is unconstitutional. Plaintiff asserts that the defendants violated his Fourth Amendment rights when they pulled him over, when they searched the vehicle, and when he was arrested. Plaintiff disputes the material facts that are the alleged basis for reasonable suspicion and probable cause as the defendant officers did not obtain any identifying information from the

anonymous tipper. Based on the disputed facts, the Fourth Amendment claim must go to a jury.

### a. Plaintiff's Arrest Was Not Supported By Probable Cause Due To Cannabis Found In The Vehicle Because It Was Not His

Jackson was simultaneously stopped, seized, detained, arrested, and handcuffed with 2:12 minutes of approaching his vehicle (Ex. T). "A seizure becomes an arrest when `a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *Brandon v. Vill. of Maywood,* 157 F. Supp. 2d 917, 925 (citing *United States v. Ienco,* 182 F.3d 517, 523. Specifically, a person is "seized" when a law enforcement officer terminates his freedom of movement by physical force or assertion of authority. *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 624, 111 S. Ct. 1547, 113 L. Ed.2d 690. "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott,* 705 F.3d at 714 (citing *Thayer v. Chiczewski,* 705 F.3d 237, 246; see also *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed.2d 343; *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L.E d.2d 142.

**An Anonymous Tip In The Probable-Cause Context**

In *Illinois v. Gates,* 462 U.S. 213, the court dealt with an anonymous tip in the probable-cause context. The Court implemented the "totality of the circumstances" approach to determining whether an informant's tip establishes probable cause. *Gates* made clear, however, that those factors that had been considered critical under *Aguilar* and *Spinelli*—an informant's "veracity," "reliability," and "basis of knowledge"—remain "highly relevant in determining the value of his report." 462 U.S., at 230, 103 S.Ct., at 2328. These factors are also relevant in the reasonable-suspicion context, although allowance must be made in applying them for the lesser

showing required to meet that standard. The opinion in *Gates* recognized that an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is "by hypothesis largely unknown, and unknowable." *Id.,* at 237, 103 S.Ct., at 2332. This is not to say that an anonymous caller could never provide the reasonable suspicion necessary for a *Terry* stop. But the tip in *Gates* was not an exception to the general rule, and the anonymous tip in this case is like the one in *Gates:* "[It] provides virtually nothing from which one might conclude that [the caller] is either honest or his information reliable; likewise, the [tip] gives absolutely no indication of the basis for the [caller's] predictions regarding criminal activities." 462 U.S., at 227, 103 S.Ct., at 2326.

By requiring "[s]omething more," as *Gates* did, *ibid.,* we merely apply what we said in *Adams:* "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized," 407 U.S., at 147, 92 S.Ct., at 1924. Simply put, a tip such as this one, standing alone, would not " 'warrant a man of reasonable caution in the belief' that [a stop] was appropriate." *Terry, supra,* 392 U.S., at 22, 88 S.Ct., at 1880, quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543. A jury could conclude that an investigation should have occurred before violating Jackson's rights, stopping and arresting him. Rodriguez admitted that he did not conduct an investigation prior to seizing Plaintiff. Accordingly, there was no determination of the veracity of the information from the caller.

### *The Officers' Subjective Beliefs*

Jackson moves to bar any reference to the officers' (a) subjective beliefs as to probable cause,

6

and (b) intent to arrest Jackson or subjective beliefs as to when Jackson was arrested. In support, Jackson argues that (a) probable cause is measured by an objective standard of a reasonable person in the position of the arresting officer, not by the arresting officer's subjective belief; and (b) when an arrest occurs is measured by an objective standard of a reasonable person in the position of the suspect, not by the arresting officer's subjective belief or intent regarding arrest. It is clear that "`[s]ubjective *intentions* play no role in ordinary, probable-cause Fourth Amendment analysis.'" *Arkansas v. Sullivan,* 532 U.S. 769, 772, (quoting *Whren v. United States,* 517 U.S. 806, 813. However, "subjective intentions" refer to an officer's subjective motivation for making an arrest, not to an officer's subjective belief of probable cause. *See Id.* The officer's "subjective belief at the time of the arrest that he lacks probable cause may be relevant in determining what facts the officer actually did know at the time of the arrest, and may tip the scale toward finding that the officer lacked probable cause." *Id.* (quoting *McCarty,* 862 F.2d at 148 n. 3). In this case, a jury could find that there was nothing reasonable about the officers' belief that Jackson was one men alleged selling drugs from on top of his vehicle. Defendants have inaccurately cited *Coleman v. City of Peoria*, 925 F.3d 336, 350. Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant. *Whren v. United States*, 517 U.S. 806, 813*; Tebbens v. Mushol,* 692 F.3d 807, 819.

    ii.    **Officers Lacked Reasonable Suspicion To Seize Jackson, The Terry Frisk Was Unwarranted, Lasted Too Long, and Violated Jackson's Fourth Amendment Rights**

Rodriguez and Gardner are seasoned and trained CPD officers who know what to say and do to justify unlawful Fourth Amendment intrusions. They want this court to believe that they had reasonable suspicion in order for them to lawfully stop Jackson. The authority to frisk is not automatic in a drug investigation. The law is settled, when courts review *Terry* stops based on

tips, they must consider the identity of the informant. See *Florida v. J.L.,* 529 U.S. 266, 271 (anonymous tip cited as justification for a *Terry* stop lacked sufficient "indicia of reliability"—it "provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility"); *Adams v. Williams*, 407 U.S. 143, 146–47 (tip from known informant "carried enough indicia of reliability" to justify an "officer's forcible stop"). Anonymous tips, by contrast, require more verification before police may execute a stop and deprive a person of liberty. Before law enforcement may stop a person based on an anonymous tip, reasonable suspicion typically "requires that [the] tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *J.L.,* 529 U.S. at 272. Absent verification of illegal conduct alleged in a tip, police acting on anonymous tips must verify details not easily ascertained by public observation or "future actions of third parties ordinarily not easily predicted." *Gates*, 462 U.S. at 245.

Moreover, for a frisk to be lawful, it must be based on reasonable suspicion that "criminal activity may be afoot and that the persons with whom [the officer] is dealing may be armed and presently dangerous." *Terry,* 392 U.S. at 30. First, officers may carry out a *Terry* stop only when they "have a reasonable suspicion, grounded in specific and articulable facts" that an individual has committed a felony or is about to commit a crime. *United States v. Hensley,* 469 U.S. 221, 229. The police are not entitled to detain a person for questioning based on only a hunch. *Terry*, 392 U.S. at 22; *United States v. Wimbush*, 337 F.3d 947, 949–50. Conclusory allegations, unsupported by specific facts, will not suffice. See *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888. At best, the officers struggle to have so much as a hunch. The officers want this court to believe that because they believed Jackson was involved in a narcotics transaction, they could order him out his car and frisk him. They did not have any information at the time of arrest that

8

he was engaged in a narcotics transaction or to believe he was "armed and presently dangerous." In this case, the officers deliberately and with wanton disregard violated the constitutional rights of Plaintiff knowing that they did not have reasonable suspicion of probable cause for the stop, search or arrest of Plaintiff.

    b. **Plaintiff's Arrest Was Not Supported By Probable Cause Before Or After Heroin Found In His Vehicle**

A reasonable jury could conclude that the officers planted the drugs on Jackson in retaliation and that the officers knew that the bag where the drugs were allegedly found was not his bag, therefore lacked probable cause. Jamal placed his bag in Jackson's vehicle, went to get some food and a lady asked to get her bag out Jackson's car. Jackson told the officer that the bag was not his and he did not sell drugs. Both were ignored. The Defendants keep changed the place where drugs were found. In their Answer to Plaintiff's Complaint, they stated cannabis and heroin were both found in the backpack in Jackson's car, but at their deposition and their summary judgment motion cannabis was found in the bag and heroin in the car's headliner. (SOFR ¶20-21). In *Dietrich,* this court held that the officers did not have probable cause to arrest an individual when they knew of "facts and circumstances that conclusively established, at the time of the [individual's] arrest," that the individual had an affirmative defense to the crime for which he was detained. 167 F.3d at 1012. In an attempt to confine that rule the court made two important findings. First, it held "that a peace officer, in assessing probable cause to effect an arrest, *may not ignore information known to him* which proves that the suspect is protected by an affirmative legal justification." *Painter,* 185 F.3d at 571 (emphasis added).

Though Rodriguez had a body worn camera and knew his partners did as well he searched the bag inside of Jackson's vehicle. When he was done he said, Good to Go. Rodriguez and others handled the backpack and it was transported to the station and Jackson's vehicle was searched

9

with no camera on and no one was monitoring Rodriguez and Crot. Ironically, they found one baggie but the Arrest report says baggies. Jackson believes they retaliated against him planted the drugs on him to violate his rights. Rodriguez said he and Gardner searched the vehicle but at the station it was he and Crot. The officer's reports and statements contradict each other in that one states that the heroin was found in the bag while the other states that the heroin was found in the headliner of the vehicle. This alone is a disputed material fact imposed by the defense and requires that this motion for summary judgement be denied. As a result of the officers violating Jackson's constitutional rights, he suffered damages (SOFA ¶¶3-12).

  c. **Defendants Are Not Entitled To Qualified Immunity**

Qualified immunity is also not available taking the allegations of the Complaint as true, as the Court must do on a motion for summary judgment. Here, the who, when, and what are all in dispute. Accordingly, the defendants are not entitled to qualified immunity and summary judgment must be denied. Similarly, when facts material to a claim of qualified immunity remains in dispute, summary judgment is inappropriate. Without a settled set of facts, it is premature for the court to analyze the purely legal question of whether a defendant is entitled to qualified immunity. See *Morfin v. City of East Chicago,* 349 F.3d 989, 1000 n.13 (when a plaintiff "presents a factual account where a reasonable officer would not be justified in making an arrest, then a material dispute of fact exists. Jackson's seizure and arrest were not support by probable cause (SOFR ¶¶5-6,8). Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law.") The officers are not entitled to qualified immunity defense because "Qualified immunity protects those officers who make a reasonable error in determining whether there is probable cause to arrest an individual."

*Chelios v. Heavener*, 520 F.3d 678, 691. In *Harlow v. Fitzgerald*, it was the Court's view—and Defendant had not provided any authority for the Court to conclude otherwise—it is unreasonable to associate the simple and sole action of wiping one's face and/or eating something with ingesting illicit drugs. Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818. In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. They first ask whether the facts, "[t]aken in the light most favorable to the party asserting the injury, show the officer's conduct violated a [federal] right" *Saucier v. Katz,* 533 U.S. 194, 201. The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. *Hope v. Pelzer,* 536 U.S. 730, 739. "[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Id.,* at 741, 122 S.Ct. 2508. There is clearly established law that protected Jackson to be free from unreasonable searches and seizures and to be free from arrest without probable cause. Like in *Canen v. Chapman,* a reasonable person in the officer's position would have understood his actions to be against the law at the time he acted. "847 F.3d 407, 412. "[I]f the parties [are] disputing who did what, when, any question of qualified immunity [must] wait until those fact issues [are] resolved." *Meyer v. Robinson*, 992 F.2d 734, 737. A plaintiff may also overcome an officer's qualified immunity by showing that the conduct in question is "so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Abbott,* 705 F.3d at 723–24. In this case, the violations by the officers were clearly egregious, unreasonable, unnecessary. (SOFA ¶¶). First, there are no allegations that establish probable cause in regard to

stopping Jackson because 1). An anonymous person called 911 after the incident occurred with a description that did not match Jackson in any reasonable manner and 2. Rodriquez fabricated statement that Jackson was moving around in his vehicle suspiciously. If that was indeed what prompted the Defendants to stop, detain, seize, and arrest Jackson, then the officers' actions were unreasonable.

## II. Defendants Are Not Entitled To Summary Judgment On Conspiracy

Under §1983, a conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Scherer v. Balkema*, 840 F.2d 437, 441. Plaintiff can establish a prima facie case of civil conspiracy, that there was "an express or implied agreement among defendants to deprive him of his or her constitutional rights," and the "actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Id.* at 442. In Jackson's case, based on the Officer's testimony, false, and incomplete documents they drafted or acquiesced, a reasonable jury could find there was a civil conspiracy." *Williams v. Seniff,* 342 F.3d 774, 785. An inference can be made that the officers were harassing or retaliating against Jackson because he videoed them harassing him 1-2 weeks prior and they refused to give him their names. (SOFA¶13). The officers falsified their allegation that an anonymous person called 911 was the basis for probable cause because the OEMC Querry shows this happened hours after the incident. (Ex A) and they ignored Carl Jackson when he stated the bag was not his (Jackson's Decl., Ex. W) and he did not sell drugs. (Ex. W) They also ignored it when a woman returned to retrieve her bag from Jackson's car. (Ex. W). The body worn camera videos do not disprove any assertion that there was any agreement between the officers because they were not even turned on at the time. Rodriguez searched the bag found in Jackson's car inside the vehicle and not on top. While

12

he was searching and possibly planting drugs on Jackson, his partners either turned away from him searching in the vehicle, covered or shut off their body worn cameras so no one could see what was occurring. Turning off body worn cameras totally defeats the purpose of officer accountability. After Defendants violated Plaintiff's Fourth Amendment Rights, Rodriguez and Crot found heroin in the headliner of Jackson's vehicle when no one was watching. The officers then jointly drafted reports after the incident (SOFA¶14) that are false, misleading, and incomplete that violate Jackson's rights. (SMFA ¶¶14-17, 32-40).

### III. Defendants Are Not Entitled To Summary Judgment On Failure To Intervene

Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise. *Lanigan v. Village of East Hazel Crest, Ill.,* 110 F.3d 467, 478. The individual officers who were present at the scene should be held liable for failure to intervene not against their own conduct, but the conduct they witnessed by their fellow police officers. A reasonable jury could find the defendants had the opportunity to intervene in the other officers' unlawful actions to prevent Jackson from being harmed. Under certain circumstances a state actor's failure to intervene renders him or her culpable under §1983. *See, e.g., White v. Rochford,* 592 F.2d 381, 383. In *Byrd v. Brishke,* this court held that "one who is given a badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." 466 F.2d at 11. An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under §1983. A jury could conclude, consistent with the evidence, that one or more of the other officers could and should have attempted to prevent Jackson's injuries. *Hostrop*

*v. Bd. of Jr. College Dist. No. 515,* 523 F.2d 569, 576. Defendants all testified that they did not see Plaintiff committing any crime, they did not find weapons or contraband when they searched Jackson's person and they did not have a search warrant nor an arrest warrant, (SOFA ¶¶21, 24). Plaintiff can prove that the officers knew that he was being falsely detained, seized and arrested and they each " ... had a realistic opportunity to intervene to prevent the harm from occurring." *Montano v. City of Chicago*, 535 F.3d 558, 569. The defendants had an independent duty to act. Officer Garnder and Crot could have used their radios, called for a lieutenant tried to obtain a search warrant. The officers should have cautioned each other to stop harassing Jackson. *Cf. Yang,* 37 F.3d at 285. Plaintiff has provided facts showing that all officers "had a realistic opportunity to intervene to prevent the harm from occurring." *Yang* v. *Hardin*, 37 F.3d 282, 285. Such a conclusion would render the plaintiff's intervention claim quite tenable. Given these disputes, the determination of whether the officers could reasonably have intervened is best left for the finder of fact. See *Abdullahi v. City of Madison*, 423 F.3d 763, 774.

      Defendants have taken the court's holding in *Filmore* out of context. At the end of the ruling in *Filmore*, the court stated, "Should the court determine that either incident took place, then the defendants must cooperate fully with inquiries designed to identify which officers were involved. In addition, **if either incident is found to have taken place, then Fillmore may also proceed against any defendants who the court finds were present at the scene for their failure to intervene."** *Fillmore v. Page*, 358 F.3d 496, 508. Defendants also misconstrue the court's holding in *Mwangangi v. Nielsen*, 48 F.4th 816 by stating, "It does not follow logically that the Rodriguez and Gardner, the officers accused of unconstitutional conduct, would also be required to intervene against their own conduct. This claim is essentially Plaintiff's round about attempt to attach vicarious liability to the City of Chicago." This legal theory was recently

14

criticized by the Seventh Circuit in *Mwangangi v. Nielsen*, 48 F.4th 816, 834 (J. Easterbrook concurring)." What is misleading is that in this case, there were several issues that the district court concluded could not be resolved at summary judgment including *Mwangangi's* failure to intervene and supervisory liability allegations against individual officers, his *Monell* challenge relating to handcuffing, and his state law theories of false imprisonment, false arrest, and battery. *Mwangangi v. Nielsen,* 48 F.4th 816, 822. At the conclusion of the majority opinion the court held, "But we are not as sure as the district court that *Mwangangi* is entitled to summary judgment on those claims. In fact, *Mwangangi* argued below that there were "still questions of material fact" on this question. Because whether the bystander officer "had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact". [quoting *Mwangangi v. Nielsen*, 48 F.4th 816 (2022) 831-832] *Doxtator*, 39 F.4th at 865.

**Summary Judgment on Plaintiff's Indemnification Claim Should Not Fail**

Several of Jackson's claims against the defendant officers remain unresolved by a jury and the Defendants could and should be found held liable for all causes of action alleged against them. A trier of fact could find for Plaintiff that the officers' actions were willful and wanton conduct or that "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1–210. For these reasons, the City of Chicago is not entitled to summary judgment on indemnification and this count should be presented to the jury.

**CONCLUSION**

**WHEREFORE,** Plaintiff, requests that this Honorable Court deny summary judgment and provide such further and additional relief it deems equitable and just.

Dated: February 14, 2023

Respectfully submitted,
**PINKSTON LAW GROUP, P.C.**
/s/ Danielle A. Pinkston

_____

Danielle A. Pinkston
54 North Ottawa Street, Suite #110
Joliet, IL. 60432
dpinkston@pinkstonlawgroup.com
Atty. for: CARL E. JACKSON

## CERTIFICATE OF SERVICE

      I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on February 14, 2023, I electronically served and filed the foregoing documents with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants of record.

| | |
|---|---|
| Jessica L. Griff, Ass. Corporation Counsel | Nicholas Perrone, Ass. Corporation Counsel |
| City of Chicago, Dept. of Law | City of Chicago, Dept. of Law |
| 2 N. LaSalle, Suite 420 | 2 N. LaSalle, Suite 420 |
| Chicago, Illinois 60602 | Chicago, Illinois 60602 |
| jessica.griff@cityofchicago.org | Nicholas.perrone@cityofchicago.org |
| *Attorneys for Defendants* | *Attorneys for Defendants* |

/s/ Danielle A. Pinkston

_____

Danielle A. Pinkston